**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,**

      **Petitioner,**

**v.**                                    **Civil Action No.:** _5:22-cv-00560_
                                             **Judge:** _____

**CRAB ORCHARD PHARMACY, INC.**

      **Respondent.**

## PETITION FOR DECLARATORY JUDGMENT

      **NOW COMES** the Petitioner Erie Insurance Property & Casualty Company ("Erie"), by and through counsel Matthew J. Perry, Esquire and J. Jarrod Jordan, Esquire and Burns White, LLC, and respectfully requests that this Court declare the rights and responsibilities of the parties relative to a contract of insurance issued to Crab Orchard Pharmacy, Inc. In support of its Petition, Erie states as follows:

### The Parties

      1.     Erie Insurance Property & Casualty Company ("Erie") is a Pennsylvania corporation with its principal place of business in Erie, Pennsylvania, and is a licensed insurer engaged in the business of insurance in West Virginia. Erie is a resident and citizen of Pennsylvania.

      2.     Crab Orchard Pharmacy, Inc. ("Crab Orchard") is West Virginia corporation with its principal place of business located at 1299 Robert C. Byrd Drive, Crab Orchard, West Virginia. Crab Orchard is a resident and citizen of West Virginia.

**Jurisdiction and Venue**

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that (i) complete diversity of citizenship exists between the Petitioner and Respondent, and (ii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.      Venue of this action in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that both petitioner and respondent are either located, reside, or regularly conduct business in this judicial district and the insurance contract at issue herein was entered into in this judicial district.

**Nature of the Action and Necessity of Declaratory Judgment**

5.      This Declaratory Judgment Action is brought, pursuant to Fed. R. Civ. P.  57, and 28 U.S.C §2201, *et seq.,* by Erie seeking declaratory relief as to the rights and obligations of the parties under an insurance policy, Erie Ultrapack Plus Policy, Policy No. Q972289555, with an initial policy inception date of March 14, 2020, issued to Crab Orchard Pharmacy, Inc. (the "Erie Policy") with respect to the claims asserted against Crab Orchard and others by Patricia Fuller, as Next Friend and Guardian of Minor Child A.J.F., currently pending in the Circuit Court of Marshall County, West Virginia, Civil Action Number 22-C-32.

6.      An actual controversy has arisen between the parties in that (i) Crab Orchard has submitted a claim under the Erie Policy relative to the lawsuit and is seeking coverage under the Erie Policy, and (ii) Erie, while defending the Lawsuit subject to a full, complete, and continuing reservation of rights, asserts that the Erie Policy does not provide coverage for the claims in the lawsuit and that Erie has no duty to defend or indemnify Crab Orchard.

**The Underlying Lawsuit**

7.       On or about April 20, 2022, a Complaint (the "Complaint") was filed in the Circuit Court of Marshall County, styled *Patricia Fuller, Next Friend and Guardian of Minor Child A.J.F. v. McKesson Corporation, et al.,* and assigned Civil Action No. 22-C-32 (the "Underlying Lawsuit"). A copy of the Complaint filed in the Underlying Lawsuit is attached hereto and incorporated herein as "Exhibit A"**.**

8.       The Complaint in the Underlying Lawsuit asserts that A.J.F. was born dependent on opioids on June 3, 2015 to Amber Fuller. The Complaint alleges that A.J.F. was born at 39 weeks at Raleigh General Hospital and, due to A.J.F.'s dependence on opioids, was diagnosed with Neonatal Abstinence Syndrome ("NAS"). *Id*.

9.       Specifically, the Complaint in the Underlying Lawsuit alleges that A.J.F. suffered from withdrawal symptoms, feeding issues, and respiratory distress, requiring the administration of morphine from June 6, 2015 to June 15, 2015. The Complaint alleges that A.J.F.'s dependence on opioids resulted from the consumption of opioids by Amber Fuller during pregnancy, which were provided by multiple wholesale and retail distributor defendants, including Crab Orchard. *Id*.

10.       As a result of A.J.F.'s diagnosis of NAS, the Complaint in the Underlying Lawsuit alleges that A.J.F. required 14 days of inpatient care, experienced feeding problems and a failure to thrive, had recurring ear and upper respiratory infections, and has been diagnosed with behavioral and emotional disorders. *Id*.

11.       The Complaint in the Underlying Lawsuit alleges that A.J.F. will have a lifetime of latent, dread medical and emotional conditions as a result of exposure to opioids, including but not

limited to brain damage, mucular-skeletal developmental disorders, speech and language disorders, behavioral disorders and increased risk of addiction.  *Id.*

12.     As a result of the diagnosis of NAS, the Underlying Lawsuit seeks damages for the costs of providing treatment for opioid-related medical conditions like NAS, damages for medical monitoring and testing for latent diseases associated with NAS, and costs for providing continuing treatment, counseling, rehabilitation services,  as well as damages for pain and suffering, emotional distress, and loss of enjoyment of life.  *Id.*

13.     Specific to Crab Orchard Pharmacy, Inc., the Complaint in the Underlying Lawsuit alleges that it principally operated in Crab Orchard, Raleigh County, West Virginia.   The Complaint alleges that, according to ARCOS data, Crab Orchard Pharmacy, Inc. received 7,580,460 opioid pain pills between the years of 2006 and 2014, placing it number 2 in Raleigh County and number 13 in West Virginia for the highest number of opioid shipments. *Id.*

14.     Count I of the Complaint in the Underlying Lawsuit asserts claims for fraud against the manufacturers of the opioid medications (the "Manufacturing Defendants").

15.     Count II of the Complaint in the Underlying Lawsuit asserts claims of negligence and gross negligence against all Defendants, with alleged negligent acts including the failure to act as a last line of defense against diversion of opioids, failing to properly review and analyze prescription orders and data for red flags, and failure to report suspicious orders or failing to refuse to fill those prescriptions.

16.     Count III of the Complaint in the Underlying Lawsuit asserts claims for civil conspiracy, alleging that all Defendants acted in concert to engage in wrongful conduct to increase profits.

17.     Count IV of the Complaint in the Underlying Lawsuit asserts claims against all Defendants for injunctive and equitable relief for medical monitoring and continuing treatment for the costs of ongoing medical care and testing for latent disease related to opioid exposure.

18.     Count V of the Complaint in the Underlying Lawsuit asserts claims against the Defendants for products liability in the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling and sale of opioid products.

19.     Count VI of the Complaint in the Underlying Lawsuit asserts claims against the West Virginia Board of Pharmacy for alleged violations of West Virginia CSR §115-8-7.8, asserting that the Board of Pharmacy failed to identify abnormal or unusual practices of patients in the taking of opioid medications.

20.     Count VII of the Complaint in the Underlying Lawsuit asserts claims against all Defendants for punitive damages, alleging that the Defendants' actions were malicious, oppressive, willful, wanton, reckless and/or criminally indifferent.

21.     The Underlying Lawsuit seeks various damages, including:

   a. Injunctive and Equitable Relief of Medical Monitoring and Continuing Treatment;
   b. Injunctive Relief, enjoining the Defendants from engaging in unfair or deceptive practices and failing to comply with the Controlled Substances Act;
   c. Compensatory Damages;
   d. Restitution;
   e. Punitive Damages;
   f. Attorneys' Fees and Costs;
   g. Pre and Post Judgment Interest.

*Id.*

## Coverage Provisions of the Erie Policy and Coverage Issues

22.     Erie restates and incorporates herein the allegations asserted in Paragraphs 1 through 21 of the Petition for Declaratory Judgment as if fully set forth herein.

23.     Erie issued an Ultrapack Plus Policy, Policy No. Q972289555, to Crab Orchard Pharmacy, Inc. (the "Erie Policy"). A certified copy of the Erie Policy for the policy period of March 14, 2022 to March 14, 2023 is attached hereto and incorporated herein as "Exhibit B".

24.     The first policy period of the Erie Policy issued to Crab Orchard Pharmacy, Inc. was March 14, 2020 to March 14, 2021.  As such, this Erie Policy has an inception date of March 14, 2020.  A copy of the New Declarations for the first policy issued to Crab Orchard is attached hereto and incorporated as "Exhibit C".

25.     The Underlying Lawsuit alleges that A.J.F. was born on June 3, 2015 and immediately experienced symptoms and medical conditions related to NAS.

26.     The Underlying Lawsuit alleges that A.J.F.'s injuries and damages first manifested before the inception date of the Erie Policy.

27.     For all relevant time periods, the Erie Policy contains the following insuring provision, which has been modified by endorsement, Form PK-GN (Ed. 12/14):

**THIS ENDORSEMENT CHANGES THE POLICY.**

**PLEASE READ IT CAREFULLY.**

**PUNITIVE DAMAGES COVERAGE**

**KENTUCKY, MARYLAND, NORTH CAROLINA, TENNESSEE, VIRGINIA, WEST VIRGINIA, WISCONSIN**

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured become legally obligated to pay as damages, including punitive or exemplary damages to the extent allowed by law, because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      2) The "bodily injury" or "property damage" occurs during the policy period; and

      3) Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or

"property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of any "occurrence" or claim:

1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

28.  For all relevant policy periods, the insuring provision for Coverage A, bodily injury and property damage liability, is further modified by the Druggists Professional Liability endorsement, Form PK-KF (Ed. 9/18), which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.**

**PLEASE READ IT CAREFULLY.**

**DRUGGISTS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** With respect to coverage provided by this endorsement, the following is added to Paragraph **1., Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies arising out of the rendering or failure to render "pharmacy services" in connection with the named insured's practice of pharmacy, but only in the operation of your retail pharmacy. The "bodily injury" or "property damage" shall be deemed to be caused by an "occurrence".

29.    For purposes of the insuring provision under Coverage A of the Erie Policy, the

Erie Policy provides the following definitions within the Commercial General Liability Coverage

Form, Form CG 00 01 (Ed. 4/13):

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION V – DEFINITIONS**

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.  "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically stored equipment.

30.    The Erie Policy also contains the following additional definition contained in the Druggists Professional Liability Endorsement:

    **E.**    With respect to coverage provided by this endorsement, the following definitions are added to **Section V – Definitions**:

"Pharmacy services" means the art, practice, or profession of preparing, preserving, compounding, and dispensing medicines, medical drugs, supplies, equipment, or devices used in the treatment of medical disorders and maladies rendered by the insured in the capacity of a retail pharmacist or pharmacy.

"Pharmacy services" also include services by the insured as a member of a formal accreditation, standards review, or similar professional board or committee.

"Pharmacy services" does not include "manufacturing".

"Manufacturing" means the production, preparation, propagation, conversion, or processing of a drug or device, either directly or indirectly, by extraction from substances of natural origin or independently by means of chemical or biological synthesis, and includes any packaging or repackaging of the substance(s) or labeling or relabeling of

its container, and the promotion and marketing of such drugs or devices. "Manufacturing" also includes the preparation and promotion of commercially available products from bulk compounds for resale by pharmacies, practitioners or other persons.

31.     In accordance with the terms of the insuring provision for Coverage A – Bodily Injury and Property Damage Liability, liability coverage is only available if the "bodily injury" or "property damage" occurs during the policy period.

32.     The Underlying Lawsuit alleges that A.J.F. suffered injury in utero and experienced symptoms of NAS upon birth on June 3, 2016.

33.     Under West Virginia law, the date on which A.J.F. first sustained injury is the date on which the bodily injury is deemed to have occurred for purposes of insurance coverage.

34.     The Complaint in the Underlying Lawsuit alleges that A.J.F. first manifested injury due to NAS shortly after birth in June 2015, which is prior to the policy period of the Erie Policy.

35.     There is no coverage under the Erie Policy for the claims asserted in the Underlying Lawsuit because the alleged injuries of A.J.F. first manifested prior to the inception date of the Erie Policy.

36.     Additionally, the terms of the insuring provision for Coverage A – Bodily Injury and Property Damage Liability only provides coverage because of "bodily injury" or "property damage".

37.     The Complaint filed in the Underlying Lawsuit seeks the recovery of damages related to medical monitoring and testing for latent disease, as well as equitable and injunctive relief.

38.     Claims for medical monitoring and for injunctive relief do not constitute "bodily injury" or "property damage" under the terms of the Erie Policy.

39.     The Erie Policy also contains certain exclusions, which limit or exclude liability coverage.  For purposes of Coverage A – Bodily Injury and Property Damage Liability, the Erie Policy provides the following exclusion:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

40.     The Complaint filed in the Underlying Lawsuit includes allegations that the Defendants sold prescription opioids knowing that there was a substantial likelihood of diversion and knowing that opioids were an inherently dangerous product.

41.     To the extent that any claims in the Lawsuit are based on claims for "bodily injury" that were expected or intended by Crab Orchard Pharmacy, Inc., there would be no coverage under the Erie Policy.

42.     Additionally, the Erie Policy contains the following additional exclusions contained in the Druggists Professional Liability Endorsement:

### DRUGGISTS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**B.** With respect to coverage provided by this endorsement, the following are added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**Willful Violation Of Statute Or Ordinance**

This insurance does not apply to "bodily injury" or "property damage" caused by the willful violation of a regulation or statute pertaining to "pharmacy services" relating to the sale of pharmaceuticals by or with the knowledge or consent of any insured.

We will coverage an act done in good faith at the request of an authorized public official.

**Intentional Injury**

This insurance does not apply to injury or damage which is expected or intended from the standpoint of the insured, or the injury or damage is the result of an intentional, criminal or malicious act by the insured.

These exclusions apply even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in the exclusion above.

43.     Based on the foregoing exclusions, allegations in the Underlying Lawsuit based on willful violation of a regulation or statute pertaining to "pharmacy services" and the sale of pharmaceuticals, or based on "bodily injury" expected or intended by Crab Orchard Pharmacy, Inc., are not covered under the Erie Policy.

44.     Accordingly, based on the provisions of the Erie Policy, whether cited in this Petition for Declaratory Judgment or not, Erie asserts that this Court should find that there is no

13

coverage under the Erie Policy for the Underlying Lawsuit and that Erie has no duty to defend or

indemnify Crab Orchard.

WHEREFORE, Erie respectfully requests that the Court, pursuant to Fed. R. Civ. P.  57,

and 28 U.S.C §2201, *et seq.,* grant the following declaratory relief:

A.  That this Court declare, based on the provisions of the Erie Policy, whether cited in this Petition for Declaratory Judgment or not, that Erie has no duty to defend Crab Orchard for the claims in the Underlying Lawsuit.

B.  That this Court declare, based on the provisions of the Erie Policy, that Erie has no duty to indemnify Crab Orchard for the claims asserted in the Underying Lawsuit.

C.  Such other and further relief as this Court deems just and appropriate.

ERIE INSURANCE PROPERTY
& CASUALTY COMPANY

By counsel

_____/s/ Matthew J. Perry_____
Matthew J. Perry, Esquire, WVSB #8589
J. Jarrod Jordan, Esquire, WVSB #10622
**BURNS WHITE, LLC**
720 Fourth Avenue
Huntington, West Virginia 25701
(304) 523-5400
mjperry@burnswhite.com
jjjordan@burnswhite.com
*Counsel for Erie Insurance Property*
*& Casualty Company*